**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **BRIAN TINSLEY**, <br> 1204 S. George Mason Dr. <br> Arlington, VA 22204 <br><br> *Plaintiff,* <br><br> v. <br><br> **R. ALEXANDER ACOSTA**, as <br> Secretary of the U.S. Department of <br> Labor, <br> 200 Constitution Ave. NW <br> Washington, DC 20210 <br><br> *Agency.* | Case No. _____ <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Brian Tinsley, by and through undersigned counsel, makes the following complaint under Title VII, 42 U.S.C. § 2000e *et seq.*, for discrimination based on sex, sexual orientation, and retaliation for his protected EEO activity. Mr. Tinsley demands a trial by jury on all issues so triable.

**JURISDICTION, PARTIES, & EXHAUSTION**

1.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2.  Defendant Acosta is Secretary of the U.S. Department of Labor being sued in his official capacity as such.

3.  Plaintiff Tinsley was a GS-0399-05 Student Trainee (Management/Program Assistance) at the Pension Benefit Guaranty Corporation ("PBGC"), which is part of the U.S. Department of Labor.

4.  The PBGC is located in Washington, D.C., within the physical jurisdiction of this Court.

5.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

6.  Tinsley satisfied the administrative prerequisites for filing suit by contacting an EEO counselor within the required time limits.

7.  Tinsley filed a formal complaint of discrimination April 4, 2017, against the Defendant based on reprisal and gender discrimination (exhibit 1)

8.  Tinsley's formal complaint listed a continuing line of sexual harassment incidents starting February 17, 2016. (Id.).

9.  Tinsley received the Agency's final agency decision on February 26, 2018, and brings these claims herein within ninety days of when he received that decision.

10. Tinsley has satisfied all administrative requirements and exhausted his administrative remedies before bringing this claim.

**FACTS**

11. Tinsley was hired by the PBGC as a student in the Pathways paid internship program, as a GS-0399-05 Student Trainee (Management/Program Assistance), working primarily on SharePoint migration issues under the supervision of Mattie Jones.

12. Tinsley is a homosexual male, although he typically kept his sexuality private in the workplace and never made it a topic of discussion.

13. Students who are hired into the Pathways program are routinely employed by the PBGC for more than two years.

14. On February 17, 2016, Sundae Knight, Tinsley's co-worker, yelled and rolled her eyes at Tinsley after Tinsley had moved a sensitive materials recycling bin.

15. On February 24, 2016, Samuel Hairston, Tinsley's co-worker, walked past Tinsley and stared at his crotch several times.

16. On February 25, 2016, Shamille Frederick, Tinsley's co-worker, called the Tinsley "arrogant" while discussing his behavior with employees.

17. Starting in March 2016, Tinsley made his supervisor, Mattie Jones, aware that of the conduct that he was experiencing from his co-workers and that it was unwelcome.

18. On or about June 17, 2016, Sundae Knight, Lisa Smith, Shirley Lemere and Recie Goins, all co-workers of Tinsley, talked about Sam Hairston's opinion about Tinsley's sexual-orientation.

19. On or about June 28, 2016, Gloria Jenkins, Tinsley's co-worker, asked Tinsley repeatedly whether he was "into sista's" and whether he thinks she is beautiful.

20. On or about June 30, 2016, Tinsley was in a meeting room with some of his co-workers when one of his co-workers, Monica Gavin repeatedly referred to men as "sausages" within earshot of Tinsley.

21. On or about August 5, 2016, Cristal Chrispen, a co-worker, told Tinsley that others in the office have repeatedly said that Tinsley should reveal whom he is dating because "people want to know about you."

Case 1:18-cv-01222-TJK   Document 1   Filed 05/25/18   Page 4 of 10

22. On or about September 14, 2016, Stephanie Stevens looked Tinsley up and down, and turned around to continue a conversation with another co-worker, stating "you never know what men are into" and that "things happen in the park across the street, etc."

23. On or about September 12, 2016, Monica Gavin states that Tinsley is getting ready for an "at-risk population," a reference to those with sexually transmitted diseases, which has been stereotypically associated with homosexuality.

24. On or about October 4, 2016, in a meeting with Monique Coleman, Stacy Wilson and Tinsley in the room, Monique Coleman asked "is he the gay one?," to which Wilson replied "Oh, you heard that too? Everyone's heard that."

25. On December 19, 2016, Tinsley had a conversation with his supervisor, Mattie Jones. During the course of this conversation Tinsley explicitly informed Jones that he believed he was being "sexually harassed." She responded to this allegation by informing him that the incidents that he has described do not amount to sexual harassment because he was not physically touched.

26. On January 12, 2017, Tinsley's supervisor Mattie Jones directed him to be detailed to the IT department for 120 days, which Tinsley did not desire.

27. Tinsley had informed Jones that he did not want to transfer to the IT office because he had been warned about employees there and that he would not be happy there, warnings which he later confirmed when interacting with employees from the IT office.

28. On information and belief, Jones was made aware of Tinsley's EEO contact.

29. On information and belief, Jones was made aware of Tinsley's EEO complaints prior to deciding not to renew Tinsley's appointment.

30. Prior to filing his EEO complaint with the EEO Counselor, Tinsley complained to Jones about sexual harassment from Gavin.

- 4 -

31. Jones claimed that she knew everyone in the building, and the EEO office promised to interview her about the EEO issues.

32. On or about February 1, 2017, Tinsley was placed on non-duty pay status allegedly because the IT department did not desire to take him as a detailee. The Agency did not place him in another position.

33. Jones also told Tinsley that there was no more work for him to perform, even though the migration project was continuing and ongoing.

34. On information and belief, Mattie Jones was aware of Tinsley's sexual orientation and his sex based on the discussions that he overheard in the office concerning his sexuality and the statements that "everyone's heard that."

35. On February 8, 2017, Tinsley's Not to Exceed (NTE) appointment expired and was not renewed by Mattie Jones.

36. On information and belief, Tinsley was replaced by two full-time employees at the time Jones allowed his appointment to expire.

37. No one ever informed Tinsley that there was any issue with his performance or conduct on the job, and he received only positive performance reviews while employed at PBGC, including on or around December 19, 2016.

38. Tinsley had been working on migrating office files into SharePoint. At the time that he was fired, the SharePoint migration had not even neared completion.

## COUNT I – TITLE VII RETALIATORY TERMINATION

39. Plaintiff Tinsley incorporates by reference all preceding paragraphs herein.

40. Tinsley engaged in protected activity when he explicitly informed his supervisor, Mattie Jones, that he believed that he was being subjected to sexual harassment.

41. Tinsley further engaged in protected activity when he contacted the EEO office on or around January 12, 2017, and alleged harassment.

42. When the IT department declined to take on Tinsley as a detailee, Jones fired Tinsley instead of continuing to employ him in her department.

43. Jones claimed falsely that Tinsley was being fired because there was no longer any work for him; however, the SharePoint migration project that he had been working on had not yet been completed and Jones had hired two employees to replace him.

44. Jones fired Tinsley in February 2017 because of his prior protected activity, including his verbal allegation of sexual harassment, and because he contacted the EEO office about his allegations of discrimination.

45. By failing to renew his trainee positon because of his prior protected activity, the Agency violated Title VII's prohibition on retaliation.

46. Because of the Agency's actions, Tinsley suffered lost income, benefits, and the opportunity for future promotions and employment, as well as mental and emotional distress.

47. Tinsley's prior EEO activity and/or sexual harassment complaints was a motivating factor in not having his trainee position renewed.

### COUNT II – TITLE VII DISCRIMINATORY TERMINATION BASED ON SEX AND SEXUAL ORIENTATION

48. Plaintiff Tinsley incorporates by reference all preceding paragraphs herein.

49. Plaintiff's employment with the Agency was terminated on or around February 8, 2017.

50. Jones, the Agency's deciding official, on information and belief, was aware of Tinsley's sexual orientation and his sex at the time she determined to terminate Tinsley's employment.

51. Jones fired Tinsley because of his sex and his sexual orientation or was motivated by his sex and sexual orientation to terminate him.

52. Plaintiff's sexual orientation was a motivating factor in the defendant eliminating Tinsley's trainee position.

53. Sexual orientation discrimination is a form of sex discrimination forbidden under Title VII.[1]

54. By firing Tinsley because of his sex and sexual orientation, the Agency engaged in unlawful sex-based discrimination in violation of Title VII.

55. Because of the Agency's actions, Tinsley suffered lost income, benefits, and the opportunity for future promotions and employment, as well as mental and emotional distress.

## COUNT III – TITLE VII HARASSMENT BASED ON SEX AND SEXUAL ORIENTATION

56. Plaintiff Tinsley incorporates by reference all preceding paragraphs herein.

57. Tinsley was subjected to a severe and pervasive hostile work environment in 2016 when various co-workers, *inter alia*, stared at his crotch, made reference to men as "sausages," and discussed Tinsley's sexuality.

---

[1] *See, e.g.*, *Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 113–128 (2d Cir. 2018) (*en banc*) (holding that Title VII forbids discrimination against homosexuals based on (a) disparate treatment; (b) gender stereotyping, (c) associational discrimination); *Hively v. Ivy Tech. Comm. Coll. of Ind.*, 853 F.3d 339 (7th Cir. 2017) (*en banc*) (similar).

58. This conduct was clearly related to his sex as a male, as some of the derogatory statements about men were directed at men alone, and because of his sexuality, as co-workers discussed in the office their speculations about his sexuality and asked whether he was into women.

59. As stated above, sex and sexual orientation discrimination is made unlawful by Title VII's prohibition on sex-based discrimination.

60. This conduct had the effect of interfering with his work in the workplace, causing him to avoid situations where he believed certain co-workers would want to discuss these non-professional issues with him and to avoid other employees who stared at his crotch, while feeling generally uncomfortable because of the undue scrutiny his personal life was receiving in the office, as well as the derogatory terms that were being used against males.

61. Tinsley made his supervisor, Mattie Jones, aware of this harassing conduct as early as March 2016.

62. The actions of Mattie Jones towards Plaintiff, her failure to remedy the hostile environment, allowed Tinsley's co-workers to continue a hostile environment which materially altered Plaintiff's working conditions and which constitutes harassment.

63. This conduct constitutes sex-based harassment, including based on Tinsley's homosexual sexual orientation, in violation of Title VII.

64. Because of the Agency's actions, Tinsley suffered as a direct, foreseeable, and proximate result of Defendants' unlawful actions, emotional distress, humiliation, shame, and embarrassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Agency as follows:

A.   That the Court order the Agency to pay compensatory damages, including but not limited to, lost back pay, plus interest, lost fringe benefits and future lost earnings and fringe benefits, damages for emotional distress and pain and suffering, according to proof allowed by law;

B.   That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendants' conduct;

C.   That the Court grant Plaintiff all employment benefits he would have enjoyed had she not been discriminated and retaliated against;

D.   That the Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees;

E.   That the Court grant Plaintiff an award of prejudgment and post-judgment interest;

F.   That the Court grant Plaintiff a jury trial; and

G.   That the Court grant Plaintiff all other relief the Court deems just and proper.

Dated: May 24, 2018                                    *Morris E. Fischer, Esq.*

                                                      Morris E. Fischer, Esq.
                                                      Morris E. Fischer, LLC
                                                      8720 Georgia Avenue, Suite 210
                                                      Silver Spring, MD 20910
                                                      301- 328-7631 Office
                                                      301- 328-7638 Fax
                                                      Attorney for Plaintiff

**JURY DEMAND**

The plaintiff hereby demands a jury trial on all issues so triable.


Dated: May 24, 2018                                   *Morris E. Fischer, Esq.*

                                                      _____
                                                      Morris E. Fischer, Esq.
                                                      Morris E. Fischer, LLC
                                                      8720 Georgia Avenue, Suite 210
                                                      Silver Spring, MD 20910
                                                      301- 328-7631 Office
                                                      301- 328-7638 Fax
                                                      Attorney for Plaintiff